# United States District Court
# Central District of California

| | |
|---|---|
| REBECCA STAMBANIS,<br><br>Plaintiff,<br><br>v.<br><br>TBWA WORLDWIDE, INC., dba TBWA/MEDIA ARTS LAB; AND DOES 1-25<br><br>Defendants. | Case No. 2:19-cv-03962-ODW (JEM)<br><br>**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION TO DISMISS OR STRIKE [12]** |

## I.     INTRODUCTION

Defendant TBWA Worldwide, Inc. dba TBWA/Media Arts Lab ("TBWA") moves to dismiss and/or strike portions of Plaintiff Rebecca Stambanis's ("Stambanis") Complaint. (*See generally* Mot. to Dismiss ("Mot."), ECF No. 12.) For the reasons that follow, the Court **GRANTS IN PART, AND DENIES IN PART,** TBWA's Motion.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2016, Stambanis joined TBWA as its Chief Strategy Officer, specifically to lead the advertising strategy for TBWA's client, Apple. (Notice of Removal Ex. A ("First Am. Compl."), at ¶¶ 1, 12, ECF No. 1-1.) Prior to joining TBWA and while discussing her potential employment, Stambanis informed TBWA "that before she could consider whether to accept the position, her partner would need legal status to be able to live in the United States." (FAC ¶ 14.) TBWA assured Stambanis that they did this all the time and "proposed that [Stambanis] give up her green card, marry her partner, then return to the United States." (FAC ¶ 15.) Stambanis declined this proposal. (FAC ¶ 15.) In response, TBWA proposed that Stambanis open a fictious business in the United States to obtain a visa. (FAC ¶ 16.) Stambanis was skeptical about this plan, and instead, requested that TBWA include the visa requirement as part of her offer letter. (FAC ¶ 16.) TBWA agreed. (FAC ¶ 16.)

On March 11, 2016, Stambanis signed the offer letter (the "Letter Agreement"). (FAC ¶ 17.) Her official start date was April 1, 2016, but TBWA allowed her to work remotely in Portland until the end of April before she had to relocate to Los Angeles. (FAC ¶ 17; *see also* Decl. of Caitlin Connelly ("Connelly Decl.") Ex. 1, ECF No. 12-2.) Around April 4, 2016, Stambanis and her family traveled to Los Angeles to sign paperwork related to her employment. (FAC ¶ 18.) However, upon arriving, TBWA requested that Stambanis stay the entire week, which she did. (FAC ¶ 18.) TBWA then requested that Stambanis return to Los Angeles the following week for a client meeting, then fly to Cupertino for another meeting. (FAC ¶ 18.)

During the week of April 18, 2016, Stambanis was diagnosed with cervical cancer and needed immediate surgery. (FAC ¶ 19.) She informed TBWA, but TBWA scheduled conference calls with Stambanis for the following day after her surgery. (FAC ¶ 19.) As a result of her condition, Stambanis was unable to relocate to Los Angeles. (FAC ¶ 20.) Nonetheless, during the first week of May, TBWA scheduled a

meeting in Ojai and informed Stambanis that they would put her and her family in a hotel since TBWA needed her in Los Angeles full-time. (FAC ¶ 20.)

Stambanis alleged that as of June 2016, TBWA had done nothing to secure the visa it promised for Stambanis's partner. (FAC ¶ 22.) As such, her partner's visa expired. (FAC ¶ 22.) Stambanis reached out to TBWA about the visa, and TBWA's lawyers informed Stambanis that she would be required to invest $75,000 for an office and as a base investment to obtain a visa for her partner. (FAC ¶ 23.) Stambanis also alleged that TBWA's lawyers advised her and her partner to lie and mislead immigration officials about the business. (FAC ¶ 23.) Stambanis informed TBWA that their proposal was not "realistic, ethical[,] or legal, and that she refused to mislead or lie to immigration officials or invest money into what she perceived to be a scam." (FAC ¶ 24.) As a result of their inability to obtain the visa, Stambanis informed TBWA that she would need to resign effective the end of July 2016. (FAC ¶ 24.) TBWA pressured Stambanis to stay and agreed to modify the terms of her employment in a subsequent agreement (the "Letter Amendment"). (FAC ¶¶ 26–27.) The Letter Amendment promised Stambanis: (1) reimbursement for any penalties or costs incurred as a result of terminating her lease in Portland; (2) reimbursement for relocation expenses; (3) use of a house and payment of all utilities; (4) travel expenses; (5) medical insurance for Stambanis's partner; (6) travel expenses for Stambanis's mother to visit from Australia; (7) travel expenses for Stambanis and her son; (8) legal expenses to obtain permits for reentry to the United States; (9) payment for relocation to Australia following her employment with TBWA; (10) travel expenses from Los Angeles to Australia; (11) a full salary for three months; and (12) payment of Stambanis's full 2016 bonus of $150,000. (FAC ¶ 27.) Stambanis signed the Letter Amendment on July 25, 2016. (Connelly Decl. Ex. 2.)

In late July 2016, Stambanis relocated from Portland to Los Angeles. (Compl. ¶ 29.) Stambanis's partner returned to Costa Rica, and her mother traveled to Los Angeles to look after Stambanis's son. (Compl. ¶ 29.) After signing the Letter

Amendment, Stambanis alleged that TWBA's leadership isolated her and excluded her from meetings and decisions. (Compl. ¶ 30.) By late August 2016, TWBA excluded Stambanis from recruiting her team and her replacement. (Compl. ¶ 32.) While visiting her partner in Costa Rica, Stambanis's password to TWBA's network stopped working. (Compl ¶ 32.) Stambanis eventually learned that by mid-August 2016, TWBA had already hired her replacement and the replacement had already started working at TWBA. (Compl. ¶ 32.)

On September 7, 2016, TWBA accused Stambanis of "bad-mouthing" the agency and its leadership to clients and that TWBA needed to accelerate her departure. (Compl. ¶ 33.) On September 16, 2016, TWBA terminated Stambanis allegedly for "pretextual reasons." (FAC ¶¶ 32, 107.)

Accordingly, Stambanis brings this lawsuit in connection with her employment with TBWA, her subsequent termination, and TBWA's alleged failure to pay wages and other benefits due to Stambanis. (FAC ¶ 1.) Specifically, Stambanis asserts seventeen causes of action: (1) discrimination in violation of California Fair Employment and Housing Act, California Government Code section 12900 *et seq.* ("FEHA"); (2) harassment in violation of FEHA; (3) retaliation in violation of FEHA; (4) discrimination and harassment in violation of public policy; (5) retaliation for opposing harassment in violation of public policy; (6) failure to prevent discrimination in violation of FEHA; (7) wrongful termination in violation in public policy; (8) negligence; (9) intentional infliction of emotional distress; (10) breach of contract; (11) intentional misrepresentation; (12) negligent misrepresentation; (13) breach of implied covenant of good faith and fair dealing; (14) violation of California Labor Code sections 432 and 1198.5; (15) failure to pay wages upon termination in violation of California Labor Code section 201; (16) defamation; (17) violation of Labor Code section 970; and (18) declaratory relief. (*See generally* FAC.)

TWBA moves to dismiss the first through sixth, eighth through ninth, eleventh through twelfth, and sixteenth through seventeenth causes of action on various

grounds. (Mot. 1.) TWBA also moves to strike portions of the First Amended Complaint. (Mot. 1.)

### III. MOTION TO DISMISS

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Accusations of fraud require a plaintiff to plead with particularity the circumstances constituting fraud. *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires that the complaint identify the "who, what, when, where, and how" of the fraudulent activity, "as well as what is false or misleading about" it, and why it is

false. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### A. Exhaustion of Administrative Remedies on FEHA Claims (Claims 1, 2, 3, and 6)

TBWA moves to dismiss Stambanis's FEHA claims on the basis that she failed to timely exhaust her administrative remedies prior to bringing the claims. (Mot. 9.) The parties agree that Stambanis's claims based on FEHA must be filed with the Department of Fair Employment and Housing ("DFEH") within one year from the date of termination. (Mot. 9; Opp'n to Mot. ("Opp'n") 8, ECF No. 22.) However, Stambanis argues that equitable exceptions to the one-year administrative exhaustion requirement applies. (Opp'n 8.)

Generally, claims based on FEHA must be filed with the DFEH within one year from the date upon which the alleged unlawful practice occurred. *See* Cal. Gov't Code § 12960(d); *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996) ("[T]he employee must exhaust the administrative remedy . . . with the Department of Fair Employment and Housing (Department) and must obtain . . . a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA.").

Courts have allowed FEHA plaintiffs to overcome their failure to exhaust when they can demonstrate that an equitable exception should apply. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 900 (9th Cir. 2001) ("The administrative limits prescribed by FEHA are treated as equivalent to statutes of limitations and are subject to equitable doctrines such as waiver, estoppel, and tolling."). Moreover, "[w]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would

not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

Here, in order to prove that Stambanis failed to exhaust her administrative remedies, TBWA submitted a copy of Stambanis's DFEH complaint. (*See* Connelly Decl. Ex. 3.) However, on a motion to dismiss, the Court is "generally limited to considering the contents of the complaint." *Kee v. Mersch*, 297 F. App'x 615, 617 (9th Cir. 2008). TBWA does not request judicial notice of the DFEH complaint or identify how the Court can consider it without turning this Motion into a motion for summary judgment. Accordingly, the Court cannot consider TWBA's submission of the DFEH complaint. The Court is limited to the contents of the First Amended Complaint, and based on a liberal reading of such, the Court must deny TBWA's Motion as it relates to exhaustion of administrative remedies because Stambanis alleged that she exhausted all applicable administrative remedies (FAC ¶ 10) and that she filed a complaint with DFEH and obtained a notice of right to sue (FAC ¶ 36).

However, this does not preclude TBWA from filing a motion for summary judgment on this issue, as is the typical approach for challenging a failure to exhaust administrative remedies. *See Linenbroker v. ITT Educ. Servs. Inc.*, No. 1:14-cv-00207-LJO-GSA, 2014 WL 4795169, at *5 (E.D. Cal. 2014) ("The . . . more 'typical' approach requires a [d]efendant to present probative evidence that the plaintiff failed to exhaust administrative remedies, and therefore should be raised in a Rule 56 motion for summary judgment.").

TBWA's motion to dismiss based on failure to exhaust administrative remedies is **denied**.

**B.     Harassment in Violation of FEHA (Claim 2)**

TBWA moves to dismiss Stambanis's second claim for harassment (creating a hostile work environment) on the basis that she failed to sufficiently plead a claim. Specifically, TBWA argues that Stambanis has not alleged "even a single offensive comment or conduct related to her gender, familial or marital status, or national origin

or ancestry." (Mot. 10.)

The elements for a hostile work environment claim under FEHA are: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014). To satisfy the severe or pervasive prong of the third element, a "plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 131 (1999). "[T]he prohibition of harassment forbids only behavior so objectively offensive as to . . . create a hostile or abusive work environment." *Landucci*, 65 F. Supp. 3d at 703 (internal quotation marks omitted).

TBWA moves to dismiss only on the third element. Here, Stambanis conclusively alleged that TBWA harassed her "on the basis of her gender, familial and marital status, and national origin and ancestry, in violation of FEHA." However, Stambanis has not identified any harassment on the basis of her gender or her Australian ancestry. Although the Opposition argues that the First Amended Complaint "allege[d] in detail the offensive comments and conduct," Stambanis does not point to any specific allegations in the First Amended Complaint. (*See* Opp'n 11.) At most, Stambanis alleged a single incident involving her marital status. Specifically, Stambanis alleged that TBWA "proposed that [Stambanis] give up her green card, marry her partner, then return to the United States." (FAC ¶ 15.) However, this single statement does not amount to harassment that is severe or pervasive. *See Nagar v. Found. Health Sys., Inc.*, 57 F. App'x 304, 306 (9th Cir. 2003) (affirming summary judgment that "offhand comments and isolated incidents of offensive conduct" were insufficient to support a claim for hostile work environment).

Accordingly, as Stambanis failed to sufficiently allege severe or pervasive conduct, Stambanis's second claim is **dismissed with leave to amend**.

## C. Discrimination, Harassment, and Retaliation in Violation of Public Policy (Claims 4 and 5)

TBWA moves to dismiss Stambanis's fourth and fifth claims for discrimination and harassment, and retaliation in violation of public policy[2] on the basis that no such common law claims exist. (Mot. 11.)

Stambanis refers the Court to *Medix Ambulance Serv., Inc. v. Superior Court*, 97 Cal. App. 4th 109, 118 (2002), for the proposition that common law claims for discrimination and harassment, and retaliation exist. (Opp'n 12.) However, *Medix* does not stand for that proposition. In a header entitled "There is No Common law Cause of Action for Sexual Harassment," the *Medix* court recognized a general public policy forbidding sexual harassment and direct harassment in the work place, but that public policy is reflected in FEHA, not a common law cause of action. *Medix*, 97 Cal. App. 4th at 118.

Moreover, the other authority Stambanis relies on involve claims for wrongful discharge, not discrimination and harassment, and retaliation. (*See* Opp'n 12.) Also, courts in this circuit have recognized no common law claims for discrimination and harassment in violation of public policy and retaliation in violation of public policy. *See Fitch v. San Francisco Unified Sch. Dist.*, No. 15-cv-02769-SI, 2015 WL 6551668, at *4 (N.D. Cal. Oct. 29, 2015) ("The Court dismisses plaintiff's claim for harassment in violation of public policy."); *Baird v. Office Depot*, No. C-12-6316 EMC, 2014 WL 2527114, at *8 (N.D. Cal. June 4, 2014) ("The Court finds no authority that supports a general common law claim for violation of FEHA's public policy."); *see generally Whitman v. Schlumberger Ltd.*, 793 F. Supp. 228, 232–33 (N.D. Cal. 1992) (reviewing California law and finding no common law cause of action for retaliation in violation of public policy).

---

[2] This claim is separate and distinct from Stambanis's seventh claim for wrongful termination in violation of public policy, which is a proper cause of action. *See Vargas v. BP America, Inc.*, 549 F. App'x 641, 642 (9th Cir. 2013) (recognizing a claim for retaliatory wrongful termination in violation of public policy under California law).

Accordingly, Stambanis's fourth and fifth claims are **dismissed without leave to amend**.

**D.  Negligent Infliction of Emotional Distress and Negligent Misrepresentation (Claims 8, 12)**

TBWA moves to dismiss Stambanis's negligent infliction of emotional distress and negligent misrepresentation claim on two bases: (1) Stambanis cannot base her negligence claims on her termination because terminations are inherently intentional; and (2) Stambanis's exclusive remedy for her negligence claims is workers' compensation. (Mot. 11–12.)

TBWA's first basis for dismissal is not persuasive. Stambanis does not dispute that she cannot recover on a claim of negligent infliction of emotion distress for wrongful termination. *See Tu v. UCSD Med. Ctr.*, 201 F. Supp. 2d 1126, 1131 (S.D. Cal. 2002) (finding that intentional employment decisions cannot be the bases for a negligent infliction of emotional distress claim). However, Stambanis's negligent infliction of emotional distress claim does not rely solely on her termination. Instead, Stambanis alleged that TBWA failed to use ordinary care in hiring, supervising, training, and/or retraining its employees. (*See* FAC ¶ 93.) These allegations are sufficient.

However, Stambanis failed to address the issue that the exclusivity of the workers' compensation doctrine bars her negligence-based claims. As such, the Court treats Stambanis's failure to oppose this issue as waiving and abandoning her eighth and twelfth claims. *See Heraldez v. Bayview Loan Servicing, LLC*, No. CV 16-1978-R, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 12, 2016) *aff'd*, 719 F. App'x 663 (9th Cir. 2018) (citing *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011)) ("Failure to oppose constitutes a waiver or abandonment of the issue.").

The Court notes that Stambanis addressed workers' compensation in the context of intentional infliction of emotional distress. (*See* Opp'n 14.) However, TBWA's

Motion did not seek to exclude Stambanis's intentional infliction of emotional distress claim on the basis of workers' compensation exclusivity; TBWA sought only to exclude Stambanis's negligence-based claim on workers' compensation exclusivity. (*See* Mot. 12.) As such, the Court does not reach the issue of whether workers' compensation exclusivity also bars a claim for intentional infliction of emotion distress.

Accordingly, Stambanis's claims for negligent infliction of emotional distress and negligent misrepresentation is **dismissed with prejudice**.

E.  **Intentional Infliction of Emotional Distress (Claim 9)**

TBWA moves to dismiss Stambanis's intentional infliction of emotional distress claim on the basis that Stambanis failed to plead extreme and outrageous conduct or severe emotional distress. (Mot. 12–14.)

The elements for intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Melorich Builders, Inc. v. Superior Court*, 160 Cal. App. 3d 931, 935 (1984) (internal quotation marks and citation omitted).

Here, Stambanis does not identify TBWA's extreme and outrageous conduct or the severe emotional distress that she suffered. Instead, as it relates to emotional distress, Stambanis argues that "extreme and outrageous conduct is generally a factual issue for the jury," and TBWA "ignores the case authority involving far less egregious conduct." (Opp'n 14 (internal quotation marks omitted).) Stambanis's Opposition misses the point. TBWA asserts that Stambanis failed to sufficiently allege her claim for intentional infliction of emotional distress. Stambanis's failure to point to any allegations in her First Amended Complaint highlights its deficiency.

Accordingly, Stambanis's claim for intentional infliction of emotional distress is **dismissed with leave to amend**.

## F. Breach of Contract and Failure to Pay Wages Upon Termination (Claims 10 and 15)

TBWA seeks to dismiss Stambanis's tenth and fifteenth claims on the bases that there was no breach, and thus, no wages due at termination. (Mot. 14.)

Stambanis alleged that TBWA breached its contractual obligations by: "(1) failing to pay [Stambanis's] full salary from the date of her termination on September 26, 2016, through March 2017, (2) paying her full bonus of $150,000, (3) failing to pay [Stambanis's] medical insurance coverage through December 30, 2016, and (4) failing to pay [Stambanis's] relocation costs to Australia." (FAC ¶ 107.) TBWA asserts that the Letter Amendment conditioned Stambanis's receipt of items one, three, and four on her continued employment with TBWA through December 2016. (Mot. 14.)

TBWA's argument is without merit. The Letter Amendment provides that the "relocation package is based on your continued employment with [TBWA] through December 2016 (with the exception of the salary continuance from January through March)." (Connelly Decl. Ex. 2.) The Letter Amendment only conditioned Stambanis's relocation package on her continued employment through December 2016. However, continued employment was not a condition with respect to payment of her bonus, medical insurance, or salary. However, even if the Court accepted that Stambanis's medical insurance and salary could be considered part of the "relocation package," the Letter Amendment carved out the salary continuance from the relocation package. Moreover, TBWA failed to address the issue of Stambanis's bonus, which is in a separate section of the Letter Amendment and not conditioned upon her continued employment.

At this stage, Stambanis has adequately alleged that TBWA breached its contract, and thus, failed to pay her wages upon termination. TBWA's Motion as to these two claims is **denied**.

**G.    Defamation (Claim 16)[3]**

TBWA moves to dismiss Stambanis's defamation claim on the basis of the common interest privilege. (Mot. 15.) Specifically, TBWA asserts that "defamatory remarks are privileged where the communication is without malice and between persons who have a 'common interest' in the communication's subject matter." (Mot. 15.)

Under California law, defamation, which may be asserted as a claim for slander (oral) or libel (written), includes the following elements: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *KM Strategic Mgmt., LLC v. Am. Casualty Co. of Reading PA*, 156 F. Supp. 3d 1154, 1166–67 (C.D. Cal. 2015) (quoting *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369 (2010)). Both slander and libel are specifically defined under the California Civil Code to require a "false and unprivileged publication" either oral or written. *KM Strategic Mgmt.*, 156 F. Supp. 3d at 1167. California Civil Code section 47(c) renders certain communications privileged that is made without malice on subjects of mutual interest. Cal. Civ. Code § 47(c). Specifically, the common interest privilege applies to non-malicious communications within a company concerning the job performance of a current employee, *see Rudwall v. Blackrock, Inc.*, 289 F. App'x 240, 241 (9th Cir. 2008), and to managers' communications to colleagues about employees. *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 961–62 (9th Cir. 2008). "The malice necessary to defeat a qualified privilege . . . is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* . . . that the defendant lacked reasonable ground for

---

[3] Initially, TBWA moved to dismiss Stambanis's fraud claim, but withdrew that portion in its Reply. (Reply 7 n.5, ECF No. 23.)

belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Tuas v. Loftus*, 40 Cal. 4th 683, 721 (2007).

At this time, it is improper for the Court to resolve the factual issues regarding whether the common interest privilege is applicable. Based on the First Amended Complaint, Stambanis sufficiently alleged a defamation claim and that TBWA communicated the allegedly defamatory statements to those not covered by the privilege. (*See* FAC ¶ 142.) Thus, based on Stambanis's allegations, taken as true at this stage, the common interest privilege is not a complete defense to the defamation claim.

Moreover, Stambanis has alleged that there is at least an inference that TBWA acted with malice in its communications. Stambanis alleged that TBWA was angry with her for not just marrying her partner and that it was furious with the terms of the Letter Amendment. (FAC ¶ 34.) As a result, Stambanis alleged that TBWA made defamatory statements for illegitimate reasons. (FAC ¶ 146.) Thus, even if the common interest privilege applied, Stambanis has alleged an inference of malice. *See Berger v. Harley Ellis Devereaux*, No. CV 08-2318 MMM (AGRx), 2008 WL 10610129, at *9 (C.D. Cal. June 6, 2008) (finding that allegation of facts giving rise to an inference of malice sufficient to defeat a defendant's claim to the common interest privilege).

TBWA's Motion to Dismiss Stambanis's defamation claim is **denied**.

## H. Injunctive Relief

TBWA moves to dismiss and/or strike Stambanis's request for injunctive relief on the basis that a former employee cannot seek injunctive relief because a former employee would not benefit from the injunction and therefore lacks standing to sue for such relief. (Mot. 16–17.)

As a former employee, Stambanis lacks standing to sue for injunctive relief. *Byrd v. Masonite Corp.*, 215 F. Supp. 3d 859, 865 (C.D. Cal. 2016). Former employees lack standing to bring injunctive relief because such employees do not

benefit from the injunction. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011).

In response, Stambanis argues that she is actually seeking injunctive relief to prevent TBWA from making defamatory statements. (Opp'n 18.) However, this is not true. Stambanis's First Amended Complaint alleged that she seeks injunctive relief to prevent TBWA from "engaging in any further unlawful practices, policies, and discrimination, harassment, and retaliation." (Compl. 23.) Moreover, an injunction to prevent speech is an area that is not fully briefed or alleged in the First Amended Complaint, but nonetheless, is considered presumptively unconstitutional. *See Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012) (finding that injunctions targeting speech, even defamatory speech, are "presumptively unconstitutional").

Accordingly, Stambanis's request for injunctive relief is **dismissed with leave to amend**. Although Stambanis is given leave to amend to overcome the presumption of unconstitutionality, the Court warns Stambanis that she should not replead this request for relief if she cannot cure the deficiencies.

### IV. MOTION TO STRIKE

Within the Motion to Dismiss, TBWA seeks to strike certain allegations based on Stambanis's failure to allege a claim.

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The decision on whether to grant a motion to strike is made at the Court's discretion. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds in Fogerty v. Fantastic, Inc.*, 510 U.S. 517 (1994)). In using its discretion, the court must view the pleadings in the light most favorable to the non-moving party. *In re 2TheMart.com Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

Courts may grant a motion to strike "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues

prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy*, 984 F.2d at 1527). Courts may also grant such a motion in order to streamline the resolution of the action and focus the jury's attention on the real issues in the case. *See Fantasy*, 984 F.2d at 1528. Yet, motions to strike are generally disfavored due to the limited role that pleadings play in federal practice, and because they are often used as a delay tactic. *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).

The issue is, in viewing the pleadings in the light most favorable to Stambanis, whether the line items that TBWA seeks to strike "could have no possible bearing on the subject matter of the litigation." *Color Me Mine Enters., Inc. v. S. States Mktg., Inc.*, 2012 WL 12888693, at *1 (C.D. Cal. July 25, 2012). As the Court addressed above, Stambanis has sufficiently alleged a claim for breach of contract, and TBWA did not move to dismiss Stambanis's breach of implied covenant and good faith claim. As such, striking allegations that TBWA breached its contractual obligations and violated the covenant of good faith[4] and fair dealing are improper.

Accordingly, TBWA's request to strike is **denied.**

---

[4] TBWA cites *Bionghi v. Metropolitan Water District of Southern California*, 70 Cal. App. 4th 1358, 1370 (1999) for the position that an at-will employment provision nullifies any implied-in-fact agreement. Not so. The court dismissed the implied covenant claim because it relied on the same facts and sought the same damages as the breach of contract claim. *Id.* Accordingly, *Bioghi* is not as broad as TBWA believes it to be.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART,** and **DENIES IN PART,** TBWA's Motion to Dismiss (ECF No. 12). Stambanis may amend her Complaint to address the deficiencies identified above within **twenty-one (21) days** from the date of this Order.

**IT IS SO ORDERED.**

August 23, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**