# United States District Court
# Central District of California

| | |
|---|---|
| REBECCA STAMBANIS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>TBWA WORLDWIDE, INC., dba TBWA/MEDIA ARTS LAB; AND DOES 1-25<br><br>　　　　　　Defendants. | Case No. 2:19-cv-03962-ODW (JEMx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [42]** |

## I.　INTRODUCTION

Defendant TBWA Worldwide, Inc. dba TBWA/Media Arts Lab ("TBWA") moves to dismiss Plaintiff Rebecca Stambanis's Second Amended Complaint. (Mot. to Dismiss ("Mot."), ECF No. 42.) For the reasons that follow, the Court **GRANTS** TBWA's Motion.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2016, Stambanis joined TBWA as its Chief Strategy Officer, specifically to lead the advertising strategy for TBWA's client, Apple. (Second Am. Compl. ("SAC"), ¶¶ 1, 12, ECF No. 41.) Prior to joining TBWA and while discussing her potential employment, Stambanis informed TBWA "that before she could consider whether to accept the position, her partner would need legal status to be able to live in the United States." (SAC ¶ 14.) TBWA assured Stambanis that they did this all the time and "proposed that [Stambanis] give up her green card, marry her partner, then return to the United States." (SAC ¶ 15.) Stambanis declined this proposal. (SAC ¶ 15.) In response, TBWA proposed that Stambanis open a fictious business in the United States to obtain a visa. (SAC ¶ 16.) Stambanis was skeptical about this plan, and instead, requested that TBWA include the visa requirement as part of her offer letter. (SAC ¶ 16.) TBWA agreed. (SAC ¶ 16.)

On March 11, 2016, Stambanis signed the offer letter (the "Letter Agreement"). (SAC ¶ 17.) Her official start date was April 1, 2016, but TBWA allowed her to work remotely in Portland until the end of April before she had to relocate to Los Angeles. (SAC ¶ 17.) Around April 4, 2016, Stambanis and her family traveled to Los Angeles to sign paperwork related to her employment. (SAC ¶ 18.) However, upon arriving, TBWA requested that Stambanis stay the entire week, which she did. (SAC ¶ 18.) TBWA then requested that Stambanis return to Los Angeles the following week for a client meeting, then fly to Cupertino for another meeting. (SAC ¶ 18.)

During the week of April 18, 2016, Stambanis was diagnosed with cervical cancer and needed immediate surgery. (SAC ¶ 19.) She informed TBWA, but TBWA scheduled conference calls with Stambanis for the following day after her surgery. (SAC ¶ 19.) As a result of her condition, Stambanis was unable to relocate to Los Angeles. (SAC ¶ 20.) Nonetheless, during the first week of May, TBWA scheduled a meeting in Ojai and informed Stambanis that they would put her and her family in a hotel since TBWA needed her in Los Angeles full-time. (SAC ¶ 20.)

Stambanis alleges that as of June 2016, TBWA has done nothing to secure the visa it promised for Stambanis's partner. (SAC ¶ 22.) Stambanis reached out to TBWA about the visa, and TBWA's lawyers informed Stambanis that she would be required to invest $75,000 for an office and as a base investment to obtain a visa for her partner. (SAC ¶ 23.) Stambanis also alleged that TBWA's lawyers advised her and her partner to lie and mislead immigration officials about the business. (SAC ¶ 23.) Stambanis informed TBWA that their proposal was not "realistic, ethical[,] or legal, and that she refused to mislead or lie to immigration officials or invest money into what she perceived to be a scam." (SAC ¶ 24.) As a result of their inability to obtain the visa, Stambanis informed TBWA that she would need to resign effective the end of July 2016. (SAC ¶ 24.) TBWA pressured Stambanis to stay and agreed to modify the terms of her employment in a subsequent agreement (the "Letter Amendment"). (SAC ¶¶ 26–27.) The Letter Amendment promised Stambanis: (1) reimbursement for any penalties or costs incurred as a result of terminating her lease in Portland; (2) reimbursement for relocation expenses; (3) use of a house and payment of all utilities; (4) travel expenses; (5) medical insurance for Stambanis's partner; (6) travel expenses for Stambanis's mother to visit from Australia; (7) travel expenses for Stambanis and her son; (8) legal expenses to obtain permits for reentry to the United States; (9) payment for relocation to Australia following her employment with TBWA; (10) travel expenses from Los Angeles to Australia; (11) a full salary for three months; and (12) payment of Stambanis's full 2016 bonus of $150,000. (SAC ¶ 27.)

In late July 2016, Stambanis relocated from Portland to Los Angeles. (SAC ¶ 29.) Stambanis's partner returned to Costa Rica, and her mother traveled to Los Angeles to look after Stambanis's son. (SAC ¶ 29.) After signing the Letter Amendment, Stambanis alleged that TWBA's leadership isolated her and excluded her from meetings and decisions. (SAC ¶ 30.) By late August 2016, TWBA excluded Stambanis from recruiting her team and her replacement. (SAC ¶ 32.) While visiting

her partner in Costa Rica, Stambanis's password to TWBA's network stopped working. (SAC ¶ 32.) Stambanis eventually learned that by mid-August 2016, TWBA had already hired her replacement and the replacement had already started working at TWBA. (SAC ¶ 32.)

On September 7, 2016, TWBA accused Stambanis of "bad-mouthing" the agency and its leadership to clients and that TWBA needed to accelerate her departure. (SAC ¶ 33.) On September 16, 2016, TWBA terminated Stambanis allegedly for "pretextual reasons." (SAC ¶ 34.)

Accordingly, Stambanis brings this lawsuit in connection with her employment with TBWA, her subsequent termination, and TBWA's alleged failure to pay wages and other benefits due to Stambanis. (SAC ¶ 1.) Specifically, Stambanis asserts thirteen causes of action: (1) discrimination in violation of California Fair Employment and Housing Act, California Government Code section 12900 *et seq.* ("FEHA"); (2) retaliation for making complaints in violation of FEHA; (3) failure to prevent discrimination and harassment in violation of FEHA; (4) wrongful termination in violation of public policy; (5) intentional infliction of emotional distress; (6) breach of contract; (7) intentional misrepresentation; (8) breach of implied covenant of good faith and fair dealing; (9) violation of California Labor Code sections 432 and 1198.5; (10) failure to pay wages upon termination in violation of California Labor Code section 201; (11) defamation; (12) violation of Labor Code section 970; and (13) declaratory relief. (*See generally* SAC.)

TWBA moved to dismiss Stambanis's First Amended Complaint, which the Court granted. (Order, ECF No. 34.) TWBA now moves to dismiss the claim of intentional infliction of emotional distress in the Second Amended Complaint. (Mot. 1.)

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal

theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Accusations of fraud require a plaintiff to plead with particularity the circumstances constituting fraud. *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires that the complaint identify the "who, what, when, where, and how" of the fraudulent activity, "as well as what is false or misleading about" it, and why it is false. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**IV. DISCUSSION**

TBWA moves to dismiss Stambanis's intentional infliction of emotional distress claim on the basis that Stambanis failed to plead extreme and outrageous conduct or severe emotional distress. (Mot. 6–8.)

The elements for intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Melorich Builders, Inc. v. Superior Court*, 160 Cal. App. 3d 931, 935 (1984) (internal quotation marks and citation omitted).

Here, Stambanis fails to plead extreme and outrageous conduct or severe emotional distress. Stambanis asserts that despite knowing she had a newborn and cervical cancer, TBWA forced her to work 15–16-hour days, cut off her health insurance, failed to support her partner's immigration application, and ruined her professional reputation. (SAC ¶¶ 70, 71.) However, such conduct does not constitute extreme and outrageous conduct. *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged."); *McCoy v. Pacific Maritime Ass'n*, 216 Cal. App. 4th 283, 295 (2013) (isolation and ostracism of employee in retaliation for bringing a successful discrimination lawsuit did not go "beyond all bounds of decency" or constitute "extreme and outrageous" conduct as required for intentional infliction of emotional distress). Furthermore, though she alleges that she "suffered embarrassment, humiliation, mental anguish, severe depression, loss of self-esteem, sleepless nights, situational stress/anxiety, and emotional and physical distress" (SAC ¶ 69), such an effect does not classify as severe emotional distress. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1051 ("Discomfort, worry, anxiety, upset stomach, concern,

and agitation" do not constitute emotional distress of "such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.")

Accordingly, Stambanis's claim for intentional infliction of emotional distress is **DISMISSED WITHOUT LEAVE TO AMEND**.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion. Accordingly, all other claims will proceed.

**IT IS SO ORDERED.**

January 3, 2020

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**